IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CYNTHIA ALEXANDER, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-04540 |
| | § | |
| GREENWOOD HALL, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

This Court has before it Defendant Timothy Boris' First Motion to Dismiss (Doc. No. 5), Defendant Bill Bradfield's Motion to Dismiss (Doc. No. 10), Defendant AnswerNet, Inc.'s Motion to Dismiss (Doc. No. 22), and Defendant AnswerNet Education Services, Inc.'s Motion to Dismiss (Doc. No. 23). After considering the motions, responses, and applicable law, for the reasons detailed below the Court grants the motions to dismiss.

### I.     Factual Background

This case involves a large number of Plaintiffs[1] who allege that they were not paid overtime wages in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and that they were not provided adequate notice before a mass layoff, as required under the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 et seq. Plaintiffs filed their Complaint against seventeen Defendants: Greenwood Hall, Inc. ("Greenwood Hall"), PCS Link, Inc., Bill Bradfield, Timothy Boris, Tina J. Gentile, Josh Cage,

---

[1] The Plaintiffs in this case include Cynthia Alexander, Carmen Anderson, Connie Bernal, Gloria Bernal, Michelda Burns, Savannah Caldera, Vanessa Carballo, Tejus Collins, Brittney Covey, Terry Dalton, Takela Davis, Aquanita Hemphill, Desiree Hinojosa, Joanna Jimenez, Lorraine Juarez, Danielle Kirkpatrick, Teddy Kirkpatrick, Cora Klinkerfuss, Danielle Knipe, Rebecca Kopf, Cynthia Lampkin, Sherry Maxey, Andrea Moore, Angela Ocon, Shane Ogden, Robbie Reece, Candice Rice, April Richardson, Linda Sanders, Raven Sanders, Kiara Shepard, Kandia Smart, LeDeidra Stonum, Phylicia Taylor, Suzan Timmins, Brittney Towell, Cecily Valdez, Haven Wallace, Jasmine White, Carol Wiede, Estella Wilson, and Sharnita Woods. The Court will hereinafter refer to these Parties collectively as "Plaintiffs."

Dave Ruderman, Shane Cobb, Kelly Agpawa, Bryan Hale, Michael Poutre, Anastasia Banks, Lianne Corbiere, Jonathan Newcomb, Lyle Green, AnswerNet, Inc. ("AnswerNet"), and AnswerNet Education Services, Inc. ("AES") (hereinafter collectively referred to as "Defendants"). (Doc. No. 1 ¶¶ 1.1–1.2).[2]

Greenwood Hall, according to Plaintiffs' Complaint, is a corporation incorporated in Nevada with its principal place of business in California. (*Id.* ¶ 4.44). The corporation acted as a call center for universities around the nation, which provided its customers with outsourced solutions for generating new students and/or helping students with financial aid for traditional and non-traditional online educational programs. Plaintiffs were employed by Greenwood Hall at its Bryan, Texas facility. Plaintiffs allege that on December 1, 2017, Greenwood Hall announced that it would close its entire location immediately and terminated all employees of that location. (*Id.* ¶¶ 5.1–5.3).

As a result of the sudden closing, Plaintiffs allege that they were not paid at least minimum wage by Greenwood Hall in order to compensate them for the last two paychecks[3] they should have received as employees if the location had remained open. Plaintiffs further allege that they were missing overtime wages from the previous three years under the FLSA. (*Id.* ¶ 5.4). Plaintiffs also allege that Defendants did not provide adequate notice under the WARN Act and failed to remedy the lack of notice. Plaintiffs finally claim that they did not receive the sixty days of pay and benefits that they should have received under the WARN Act. (*Id.* ¶ 5.5).

---

[2] The Court notes that Plaintiffs requested leave to file a First Amended Complaint (Doc. No. 32), which would have dropped some Defendants and added others. This motion was denied for failure to comply with local rules' conferral requirements. (Doc. No. 40).

[3] Plaintiffs' Complaint describes the missing wages as pay "for the time encompassing the last two paychecks that were meant to be issued by Greenwood Hall, Inc in order to compensate them for work as employees if the location had remained open." (Doc. No. 1 ¶ 5.4).

Shortly before Greenwood Hall's employees were terminated, the company was in the middle of financial difficulty, as it was facing an asset foreclosure by its secured lender. Eventually Greenwood Hall's senior secured lender foreclosed on the company's assets and sold those assets to third parties. According to Plaintiffs, AnswerNet purchased Greenwood Hall's assets, allegedly to save at least part of the company and focus its efforts on a smaller geographical region of call centers and clients. (*See* Doc. No. 33). AnswerNet then created AES allegedly to continue the business and operations of Greenwood Hall. (Doc. No. 1 ¶ 4.58).[4]

## II.    Jurisdictional Allegations

As part of the allegations concerning the actual basis of dispute between the Parties, Plaintiffs include factual allegations presumably intended to support its claim that this Court has personal jurisdiction over the Defendants. In their Complaint and Response to Defendants' Motions to Dismiss, Plaintiffs made no specific legal arguments in support of this Court's jurisdiction over the four Defendants at issue, only factual allegations. While those alleged contacts are discussed in more detail in the following section, the broad summary is that, according to Plaintiffs, the individual Defendants were allegedly employed as executives of Greenwood Hall at the time the company was shuttered, and therefore must have been involved in the decision to close the Bryan plant, and therefore must be liable under the causes of action described above. With regard to the entity Defendants, Plaintiffs argue that the Defendants conducted business within Texas, that AnswerNet and AES purchased Greenwood Hall's assets, and were aware or should have been aware of the closure of the Bryan plant. The Court will describe each Defendants' alleged contacts in more detail below.

---

[4] The Court notes that Defendants AnswerNet and AES dispute these facts. AnswerNet alleges that a related entity, AES, purchased Greenwood Hall's assets. AnswerNet maintains that it has no involvement with Greenwood Hall, the AES purchase, or Plaintiffs. (*See* Doc. 22 p. 4).

### III.  A Breakdown of Defendants' Alleged Contacts with Texas

Prior to discussing the precedents guiding this Court's decision and an application of that law to the facts herein, the Court finds that the most efficient way to address these issues is to set out the Texas contacts, if any, of each Defendant as taken from the Plaintiffs' Complaint (Doc No. 1), as well as from their Response (Doc. No. 33) to Defendants' various motions to dismiss.

Plaintiffs' Complaint and/or Response allege:

**Timothy Boris's Texas Contacts**[5]

- "Defendant Timothy Boris has conducted business within this judicial district." (Doc. No. 1 ¶ 4.47).

- "Defendant Timothy Boris was an officer and/or director of Greenwood Hall at times relevant to Plaintiffs [sic] claims and was involved in the decision to close the Bryan, Texas office without providing the proper notice to Plaintiffs and in the decision not to pay Plaintiffs wages earned." (*Id.*).

- "On December 1, 2017 Plaintiffs received an email from Greenwood Hall that the Bryan, Texas office was going to be closed. . . . The Chief Operating Officer on that date was Timothy Boris." (Doc. No. 33).

**Bill Bradfield's Texas Contacts**[6]

- "Defendant Bill Bradfield has conducted business within this judicial district." (Doc. No. 1 ¶ 4.46).

- "Defendant Bill Bradfield was an officer and/or director of Greenwood Hall at times relevant to Plaintiffs [sic] claims and was involved in the decision to close the Bryan, Texas office without providing the proper notice to Plaintiffs and in the decision not to pay Plaintiffs wages earned." (*Id.*).

- "On December 1, 2017 Plaintiffs received an email from Greenwood Hall that the Bryan, Texas office was going to be closed. The CEO on that date for Greenwood Hall was Defendant Bill Bradfield." (Doc. No. 33).

- "Bill Bradfield was the one that informed Plaintiffs that the Bryan, Texas office was closing down and that they no longer had a job." (*Id.*).

---

[5] Boris is an individual with his domicile in California.

[6] Bradfield is an individual with his domicile in South Carolina.

4

**AnswerNet's Texas Contacts**[7]

- "Defendant AnswerNet, Inc. purchased Greenwood Hall, Inc. and at the time it knew or should have known that Plaintiffs had not been paid the proper wages for the time Plaintiffs worked and that Plaintiffs were not provided proper notice prior to termination." (Doc. No. 1 ¶ 4.58).

- "Defendant AnswerNet, Inc. then created AnswerNet Education Services, Inc. to continue the business and operations of Greenwood Hall." (*Id.*).

- "Defendant AnswerNet, Inc. and/or its agents and/or predecessor(s) has conducted business within this judicial district." (*Id.*).

- "At the time the AnswerNet Defendants purchased those assets, the AnswerNet Defendants were aware that Plaintiffs had been terminated, that the Bryan, Texas office had been closed, and that Plaintiffs had not received a WARN Act notice or wages for the time that they had worked." (Doc. No. 33).

**AES's Texas Contacts**[8]

- "Defendant AnswerNet, Inc. and/or its agents and/or predecessor(s) has conducted business within this judicial district." (*Id* ¶ 4.59.).

- "At the time the AnswerNet Defendants purchased those assets, the AnswerNet Defendants were aware that Plaintiffs had been terminated, that the Bryan, Texas office had been closed, and that Plaintiffs had not received a WARN Act notice or wages for the time that they had worked." (Doc. No. 33).

Defendants not only contest many of these factual allegations but also whether the actual facts give rise to jurisdiction.

Defendants add for consideration the following facts (supported by sworn declarations):

**Timothy Boris's Additional Jurisdictional Testimony**

- Timothy Boris served as the Chief Operating Officer and General Counsel of Greenwood Hall from April 2017 to December 2017. In that capacity, he worked for Greenwood Hall in its Los Angeles headquarters. (Doc. No. 5-1 (Boris Decl.) ¶ 2).

---

[7] AnswerNet, Inc. is a corporation incorporated in the State of Delaware with its principal place of business in Pennsylvania.

[8] AnswerNet Education Services, Inc. is a corporation incorporated in the State of Delaware with its principal place of business in Pennsylvania.

- Boris occasionally conversed with the Bryan location via telephone and email. Boris estimated that he participated in fewer than ten phone calls to Texas to discuss operational matters and sent approximately the same number of emails. None of those communications involved the location closure or employee wages. (*Id.* ¶ 3)

- Boris never traveled to Texas for Greenwood Hall matters and has not traveled to Texas at all within the past ten years. (*Id.* ¶ 2).

- Boris did not make the decision to close the Texas office or participate in the closure. (*Id.* ¶¶ 3–4).

**Bill Bradfield's Additional Jurisdictional Testimony**

- Bill Bradfield served as interim CEO of Greenwood Hall from August 2017 to December 2017. (Doc. No. 10-1 (Bradfield Decl.) ¶ 2).

- As an employee of Greenwood Hall, Bradfield worked from his home office in South Carolina. Bradfield never traveled to Texas for business and had not visited the Bryan location. (*Id.* ¶¶ 3–4).

- Bradfield did not participate in the decision to close the Bryan location. That decision was made by the Company's Board of Directors on November 30, 2017, and was subsequently communicated to him. (*Id.* ¶ 5).

- In 2017, Bradfield talked to a Greenwood Hall manager who had traveled to South Carolina for the opening of a new facility in South Carolina. That manager was based at the Bryan location. Their discussion did not involve the Bryan location or its employees. (*Id.* ¶ 8).

- Bradfield sent one email to the entire company, which would include the Bryan location, announcing his role as interim CEO position. (*Id.* ¶ 7).

**AnswerNet's Additional Jurisdictional Testimony**

- AnswerNet is a Delaware corporation, incorporated under Delaware laws in 1998, with its principal place of business in Pennsylvania. (Doc. No. 22-1 (Pudles Decl.) ¶¶ 3–5).

- AnswerNet has never been incorporated in Texas and is not registered to conduct business there. (*Id.* ¶¶ 6–7).

- AnswerNet does not own or lease any real property in Texas. It does not maintain any office, facilities, or assets in Texas, nor does it have any employees in Texas. (*Id.* ¶¶ 8–10).

- AnswerNet does not conduct business operations in Texas, nor has it ever conducted business in Texas. (*Id.* ¶¶ 11, 13).

- AnswerNet's related entity, AES, purchased assets in foreclosure from Greenwood Hall's lender on December 15, 2017. (*Id.* ¶¶ 16, 18).

**AES's Additional Jurisdictional Testimony**

- AES is a corporation incorporated in Pennsylvania with its principal place of business in Pennsylvania. (Doc. No. 23-1 (Pudles Decl.) ¶¶ 3–4).

- AES has never been incorporated in Texas and is not registered to conduct business there. (*Id.* ¶¶ 6–7).
- AES does not own or lease any real property in Texas. It does not maintain any office, facilities, or assets in Texas,[9] nor does it have any employees in Texas. (*Id.* ¶¶ 9–11).

- AES's employees have never visited the Bryan location nor have they conducted business at the Bryan location. AES has never employed or supervised individuals at the Bryan location. (*Id.* ¶¶ 12–14).

- AES purchased assets in foreclosure from Greenwood Hall's lender in a Uniform Commercial Code sale after the lender foreclosed on Greenwood Hall due to its default. (*Id.* ¶ 16).

- The lender from which AES purchased Greenwood Hall's assets was Moriah Education Management, LLC, a Delaware limited liability company. (Doc. No. 23-1, Ex. D (Asset Purchase Agreement)).

- AES was not yet formed at the time of the Bryan office closing and never had an employment relationship with Plaintiffs. (Doc. No. 23 p.2). Greenwood Hall closed its doors to the Bryan office on December 1, 2017 (Doc. No. 1 ¶ 1.3), while AES was created on December 4, 2017 (Doc. No. 23-1, Ex. A ¶ 4).

Plaintiffs' reply to Defendants' factual contentions was brief, and all of their factual allegations are included in the first list above. Attached to their reply, Plaintiffs included three exhibits: a copy of Timothy Boris' declaration, which he had submitted along with his motion to dismiss; an unidentified letter—which neither identified the sender nor recipients—discussing the circumstances of Greenwood Hall's closure and AnswerNet's purchase of its assets; and an

---

[9] The Asset Purchase Agreement attached to the Pudles Declaration raises some confusion as to whether AES might own physical assets in Texas, as the description of assets purchased (described in Exhibit A to the Asset Purchase Agreement) includes, *inter alia*, equipment, fixtures, goods, instruments, and inventory. Although it appears from the record that Greenwood Hall had offices outside of Texas, such as in California and South Carolina, from the context it seems possible that this asset purchase could have included physical assets located at the Bryan, Texas office.

unauthenticated asset purchase agreement involving the sale of Greenwood Hall and PCS Link, Inc.'s assets by Moriah Education Management LLC, the lender, to AES, the purchaser (*Id.*, Exs. 1–3).[10] The Court notes that it can only consider the non-conclusory factual allegations raised in the Plaintiffs' pleadings and information submitted under oath, such as an affidavit. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (quoting *D.J. Invs., Inc.*, 754 F.2d at 546). Plaintiffs asserted no further arguments or factual bases for jurisdiction over the Defendants.

## IV.    Jurisdictional Considerations under Rule 12(b)(2)

Given these "facts," the Court must decide if the Defendants' contacts with Texas are of such a nature and extent to justify one or more of these foreign individuals and entities being sued in Texas. Phrased differently, the legal question before the Court is straightforward: Does this Court have personal jurisdiction over one or more of the Defendants who have moved for dismissal? That question breaks down into two different categorical analyses: whether this Court may exercise general or specific jurisdiction over any Defendant.

### A.    The Law Governing Jurisdictional Challenges

The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident, but it need only make a prima facie case if the district court rules without an evidentiary hearing. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citations omitted). Proof by a preponderance of the evidence is not required. *Bullion*, 895 F.2d at 217 (citing *D.J. Invs., Inc.*, 754 F.2d at 545-46). Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted, non-conclusory allegations in the plaintiff's complaint must be taken as true, and conflicts

---

[10] The unauthenticated Asset Purchase Agreement filed as Exhibit 3 to Plaintiffs' Response to Defendants' various motions is an identical copy of the authenticated Asset Purchase Agreement filed by AnswerNet and AES as exhibits to their respective motions to dismiss. The Court therefore considers this document's authenticated versions as properly before the Court. Further, the Court notes that the Asset Purchase Agreement is the only document indicating that PCS Link, Inc. was jointly and severally a borrower with Greenwood Hall, and that PCS Link, Inc.'s assets were also sold as part of the agreement.

between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists. *Id.* (quoting *D.J. Invs., Inc.*, 754 F.2d at 546); *see also Central Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) ("The court shall accept as true [the party seeking to assert jurisdiction's] uncontroverted allegations (so long as the allegations are not merely conclusory) . . . . "). In reviewing a motion to dismiss, the court "may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1998).

Notwithstanding this, the Fifth Circuit has explained "that the prima-facie-case does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.2d 320, 326 (5th Cir. 1996)); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998) ("[T]he law does not require us to struthiously to credit conclusory [jurisdictional] allegations or draw farfetched inferences.") (citation and internal quotation marks omitted)). Accordingly, where sworn affidavit testimony controverts conclusory jurisdictional allegations, the Court is not required to resolve conflicts in favor of the party relying on those allegations.

A federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989). A district court must determine whether both the forum state's long-arm statute and federal due process permit the court to exercise personal jurisdiction. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (citations omitted).

Since the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis. *See Wilson*, 20 F.3d at 647 (citations omitted). Federal due process requires a plaintiff to prove: (1) that the non-resident purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and (2) that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 647 (quotations and citations omitted).[11]

Personal jurisdiction over a nonresident defendant is consistent with due process when the defendant has established "minimum contacts" with the forum state and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Johnston*, 523 F.3d at 609 (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if the asserted claims arise out of or relate to the defendant's contacts with the forum. *Cent. Freight Lines Inc.*, 322 F.3d at 381. The contacts must indicate that the nonresident defendant "purposefully availed himself of the benefits of the forum state." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Brown v. Flowers Indus. Inc.*, 688 F.2d 328, 333 (5th Cir. 1982). In contrast, general jurisdiction exists for any cause of action if the nonresident defendant's contacts with the forum are so substantial, continuous and systematic that the defendant is essentially "at home" in the forum. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). While the courts accept well-pleaded facts, they do not accept as true all conclusions and inferences made in the pleadings.

---

[11] This synopsis of the law is taken almost verbatim from *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). This Court utilizes this opinion because it finds Judge King's summary to be one of the best and most succinct descriptions available. To avoid confusion and for ease of reading the Court has omitted the quotation marks.

Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for specific jurisdiction has been presented. Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state. *See Burger King*, 471 U.S. at 474, 105 S.Ct. 2174 ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) ("[T]he mere allegation that an out-of-state defendant has tortuously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."); *IMO Indus., Inc. v. Kiekert, A.G.*, 155 F.3d 254, 263 (3d Cir. 1998); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625–26 (4th Cir. 1997), *cert. denied*, 523 U.S 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998). . . . *("[T]he law does not require us to struthiously to credit conclusory [jurisdictional] allegations or draw farfetched inferences.") (citation and internal quotation marks omitted).* Appellants' sole evidence is their state court petition, which alleges "on information and belief" that Appellee knew Appellants are Texas residents and knew its actions would intentionally cause harm to Appellants in Texas. *Appellants present no other evidence of Appellee's contacts with Texas relating to Appellants' claims, and thus the district court properly concluded that the allegations are merely conclusory.*

*Panda Brandywine*, 253 F.3d at 868–69 (emphasis added).

### B. General Jurisdiction

Many consider the concept of general jurisdiction to be the area of jurisdictional law that has experienced the most radical changes over the past five years. Although Plaintiffs do not explicitly state their argument, their briefing suggests that Plaintiffs believe that they have alleged enough facts to establish that Defendants are essentially "at home" in Texas, while Defendants strongly disagree. Some Defendants cited *Daimler A.G. v. Bauman*, 571 U.S. 117 (2014), in support of their positions.

It is not surprising to this Court that the Defendants might seek to align themselves with the Supreme Court's opinion in *Daimler*, which is widely considered to be a landmark case currently inspiring (or inciting) most legal commentators to analyze its effects and most judges to adjust their approach to weighing general jurisdiction arguments.

In *Daimler* the Supreme Court held that despite any number of contacts with California, Daimler could not be sued there in connection with claims that arose in South America. Despite prior jurisprudence dealing with general jurisdiction, the Court found that a non-resident forum court could only find a defendant subject to general jurisdiction in states where it was "at home."

> [O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose [general] jurisdiction. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[—]for a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.

*Id.* at 137.

Prior to *Daimler*, most lawyers, commentators, and jurists alike agreed with the above statement as a general proposition, but felt that the case law supported the conclusion that a corporation, for example, could be sued in any jurisdiction in which it engaged in a substantial continuous and systematic course of dealing. *Daimler* can only be interpreted as severely undermining this school of thought. In fact, the Fifth Circuit has, based upon *Daimler*, specifically agreed that *Daimler* has narrowed the application of general jurisdiction. *Monkton Ins. Servs. Ltd.*, 768 F.3d at 429; *Patterson v. Aker Solutions, Inc.*, 826 F.3d 231 (5th Cir. 2016). It has instructed both district courts and practitioners alike that finding general jurisdiction based upon any factors not described in *Daimler* is virtually impossible absent exceptional circumstances.

> The [Supreme] Court has held that for a corporation the place of incorporation and principal place of business are where it is at home and are thus the paradigm bases for jurisdiction. [citing *Daimler*]. It is therefore incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *See id.* [*Daimler*]; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984).

*Monkton Ins. Servs. Ltd.*, 768 F.3d at 432.

According to *Daimler* an individual is at home in his or her domicile—which in this case is South Carolina for Bradfield and California for Boris. AnswerNet is incorporated in Delaware, AES is incorporated in Pennsylvania, and both have their principal place of business in Pennsylvania. Thus, absent extraordinary circumstances, Bradfield is "at home" in South Carolina, Boris is "at home" in California, AnswerNet is "at home" either in Pennsylvania or Delaware, and AES is "at home" in Pennsylvania. Obviously, this is a "sea-change" in the way district courts judge jurisdictional claims, especially for business entities.

Thus, while made more difficult by the Supreme Court, this Court will still consider the pleadings in effect using the traditional factors to determine if this is a case in which exceptions to the general "at home" rule should apply. Although Plaintiffs make few if any arguments, their filing of claims against the Defendants suggest that Plaintiffs believe Defendants have continuous and systematic contacts in Texas sufficient to subject Defendants to this Court's jurisdiction. Therefore, assuming *arguendo* that there remains some vitality in the concept that a substantial continuous and systematic presence in a state gives rise to general jurisdiction, regardless of an entity's residency, the Court will analyze that concept in view of the relevant pleadings.

> Where a defendant 'has continuous and systematic general business contacts' with the forum state, the court may exercise 'general jurisdiction' over any action brought against the defendant.

*McFadin v. Geber*, 587 F.3d 753, 759 (5th Cir. 2009). In order for these systematic contacts to establish general jurisdiction they must demonstrate that these defendants are "at home" in Texas. That being the case, this Court will analyze each of the Plaintiffs' claims of general jurisdiction and rule accordingly as to each Defendant.

### 1. Boris

Given the pleaded "facts," the most favorable interpretation for the Plaintiffs shows that Boris was an executive officer of Greenwood Hall, the company whose Texas office closed while Plaintiffs were employed at that location, and that Boris conducted business within this judicial district. Including facts supplied by Boris, Boris participated in approximately ten calls and ten emails sent to Texas regarding Greenwood Hall operational matters.

### 2. Bradfield

Given the pleaded "facts," the most favorable interpretation for the Plaintiffs shows that Bradfield was the CEO of Greenwood Hall, the company whose Texas office closed while Plaintiffs were employed there, at the time when the company closed without providing notice or final paychecks, and has conducted business within this judicial district. According to Plaintiffs, Bradfield sent a communication to the Bryan location to inform employees that the office was closing. Including facts from Bradfield, Bradfield spoke on one occasion with a Greenwood Hall manager who was based at the Bryan location—although their conversation occurred out of Texas. Bradfield also sent an email firmwide that included the Bryan office employees as recipients.

### 3. AnswerNet

Given the pleaded "facts," the most favorable interpretation for the Plaintiffs shows that AnswerNet alleged purchased the assets of Greenwood Hall, the company whose Texas office closed while Plaintiffs were employed at that location, and that AnswerNet conducted business within this judicial district.

4. <u>AES</u>

Given the pleaded "facts," the most favorable interpretation for the Plaintiffs shows that AES or one of its predecessor or affiliates purchased the assets of Greenwood Hall, the company whose Texas office closed while Plaintiffs were employed at that location, and that AES conducted business within this judicial district.

As stated above, for general jurisdiction to attach to the Defendants, *Daimler* dictates that they must be "at home." Clearly neither of the Defendant entities are incorporated in Texas, nor is Texas their principal place of business. Neither Bradfield nor Boris are domiciled in Texas. Some commentators have theorized that *Daimler* has, as a practical matter, essentially limited general jurisdiction to these factors. Whether practical or not, the *Daimler* opinion specifically makes a point of holding that there may be an exceptional case where a foreign corporation (or citizen) has so many contacts either significant in number or nature (or both) with a jurisdiction that it may be "at home" in a non-resident state. The Supreme Court cited *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), as just such a case.

The Supreme Court did not delineate a test for courts to utilize to make this determination in a post-*Daimler* world. Since it did not outline a test, this Court will utilize the pre-*Daimler* factors to determine if the Defendants here are at home in Texas. Prior to *Daimler*, courts traditionally used the general jurisdiction test that evolved after the Supreme Court's decisions in *Perkins* and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984). As previously stated, courts analyzed a person's or entity's contacts, both in terms of quality and quantity, with a state to determine if they were so substantial, continuous, and systematic that (to borrow *Daimler*'s language) it was or they were, in effect, "at home." This Court finds that

regardless of whether one uses the pre-*Daimler* standards or "heightened" post-*Daimler* standards,[12] there is no general jurisdiction as to any Defendant in this case.

The only factors cited by Plaintiffs and provided in their pleadings (as opposed to provided by the Defendants) that might support the argument that the Defendants directed contact toward Texas are the following:

| Boris | Bradfield | AnswerNet | AES |
|---|---|---|---|
| 1. Boris was an executive officer of Greenwood Hall, a company which had an office in Texas and conducted business in Texas. | 1. Bradfield was an executive officer of Greenwood Hall, a company which had an office in Texas and conducted business in Texas<br><br>2. Bradfield communicated with the Texas employees to inform them that the office was closing. | 1. AnswerNet purchased assets obtained from Greenwood Hall, a company that owned assets, including an office location in Texas, and conducted business in Texas. | 1. AES or its affiliate purchased assets obtained from Greenwood Hall, a company that owned assets, including an office location in Texas, and conducted business in Texas. |

These are the totality of the alleged Texas contacts for each individual/entity. As Defendants have explained, Boris and Bradfield each participated in occasional communications with Texas. While Greenwood Hall, the company whose assets were sold to the entity Defendants, did conduct business in Texas and operated the Bryan office, Defendants AnswerNet and AES have no offices in Texas, no employees in Texas, and provide no services in Texas. Plaintiffs offer no further theories for why these scant contacts with Texas, even if true, are sufficient to establish the Defendants as "at home" in Texas.

---

[12] It goes without saying that it was the intent of the Supreme Court in *Daimler* to narrow the reach of general jurisdiction as courts were interpreting it in the post-*Helicopteros* days.

Nevertheless, one could attempt to discern the legal theories upon which Plaintiffs seek to establish jurisdiction. Most likely Plaintiffs claim jurisdiction because they experienced damage in Texas, that Defendants communicated occasionally with entities or individuals in Texas, and that one or both of the entity Defendants purchased Greenwood Hall's assets.

Out of state phone calls, emails, and/or texts do not establish one is "at home" in the recipient's jurisdiction. Communications to Texas have been held to be merely fortuitous and insufficient to constitute purposeful availment of the jurisdiction. *Monkton Ins. Servs., Ltd.*, 768 F.3d at 433; *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985). Further, the out-of-state receipt of bank funds or assets, regardless of whether completed by check or wire transfer or some other means, does not establish "residency" by the out-of-state Defendant in the home of the transferring financial institution.

The next apparent justification for jurisdiction is that Defendants AnswerNet and AES purchased the assets of Greenwood Hall, which conducted business in Texas and previously employed the Plaintiffs. As the Court noted in footnote 3, AnswerNet argues that only AES was involved in the asset purchase. Further, the assets were not purchased from Greenwood Hall directly but rather from a company in Delaware. Plaintiffs' argument would require the Court to impute jurisdiction of one entity to its purchaser simply by virtue of an out-of-state transaction with a third party. Courts presume the institutional independence of even related corporations, such as a parent and its subsidiary, when they determine if one corporation's contacts with a forum can be the basis of jurisdiction over the related corporation. *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). It is well established in the Fifth Circuit that when "a wholly owned subsidiary is operated as a distinct corporation, its contacts with the

forum cannot be imputed to the parent." *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773–74 (5th Cir. 1988). To fuse two companies for jurisdictional purposes, there must be "proof of control by the parent over the internal business operations and affairs of the subsidiary." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). The theory is that because—in that instance—the two companies are the same entity, "the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of *International Shoe* due process analysis." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002).

No such facts are at work here between AnswetNet or AES and Greenwood Hall. Unlike a parent corporation and a subsidiary, Greenwood Hall was an unrelated corporation who did not directly interact in any manner with AES. AES purchased Greenwood Hall's assets from a third party, the secured lender. Once AES purchased the assets, it did not begin to operate offices or have employees in Texas. Further, there is no relationship between Greenwood Hall and AES. They are separate and distinct entities, with no element of control between them. The Court notes that the relationship between AnswerNet and AES appears to be much more of the kind anticipated by the Fifth Circuit for purposes of imputing jurisdiction. The AES's purchase of Greenwood Hall's assets cannot subject it or AnswerNet to jurisdiction in a forum state in which they would not otherwise be subject to jurisdiction.

Moreover, as the Court has already detailed above, the transfer of funds or payments to and from Texas does not make a defendant "at home" in Texas. *Johnston*, 523 F.3d at 610. The facts here are even less indicative of Texas contacts as those considered in *Johnston*. Greenwood Hall was not a Texas corporation and did not have its principal place of business in Texas, albeit it did have a location in Bryan, Texas. When its assets were foreclosed upon, the secured lender which did the foreclosure was Moriah Education Management LLC—a third party—which was a

Delaware limited liability company. That LLC then sold and transferred the purchased assets to

AES, as shown in the Asset Purchase Agreement, which is a Pennsylvania corporation with its

principal place of business in Pennsylvania. No part of this chain of transactions involved Texas,

except to the extent that Greenwood Hall owned some assets in Texas prior to its foreclosure.

These facts are insufficient to establish availment of Texas, much less purposeful availment of

the forum state.

Furthermore, that fact that Plaintiffs were injured in Texas because of alleged actions of

Defendants does not make the Defendants "at home" in Texas. Even assuming *arguendo* that

violations of the WARN Act or FLSA could be considered tortious actions toward the Plaintiffs,

the record as pled does not necessarily show that these Defendants were involved in the allegedly

harmful acts or that these Defendants intended those acts to be directed toward Texas. Although

*Calder v. Jones*, 465 U.S. 783 (1984), and *Guidry v. U.S. Tobacco*, 188 F.3d 619 (5th Cir. 1999),

stand for the proposition that a tortfeasor who commits a tort in one state can be sued in another

if an individual in that state is damaged, that proposition is true only if the action is directed

toward the forum state:

> However, *Calder*'s "effects" test "is not a substitute for a nonresident's minimum
> contacts that demonstrate purposeful availment of the benefits of the forum state."
> *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997), *cert. denied*, 522
> U.S. 1048, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998). " '[T]he key to *Calder* is that
> the effects of an alleged intentional tort are to be assessed as *part* of the analysis
> of the defendant's relevant contacts with the forum.'" *Id.* (quoting *Wallace*, 778
> F.2d at 395). Appellants' allegations, even if true, only relate to the foreseeability
> of causing injury in Texas, which is not a "sufficient benchmark" for specific
> jurisdiction. *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174; *Wien Air Alaska, Inc.
> v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) ("Foreseeable injury alone is not
> sufficient to confer specific jurisdiction, absent the direction of specific acts
> toward the forum."). The "foreseeability that is critical to due process analysis. . .
> that the defendant's conduct and connection with the forum State are such that he
> should *reasonably* anticipate being haled into court there." *Burger King*, 471 U.S.
> at 474, 105 S.Ct. 2174 (emphasis added). To conclude that a defendant should
> "reasonably anticipate" being haled into the forum State requires "some act by

which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," or "purposefully directs" its efforts toward the forum State residents. *Id.* at 475, 476, 105 S.Ct. 2174.

*Panda Brandywine*, 253 F.3d at 869; *see also McFadin*, 587 F.3d at 762; *Southmark Corp.*, 851 F.2d at 773 ("Nothing in the record indicates that USLICO expressly aimed its allegedly tortious activities at Texas, or that Texas is even the focal point of USLICO's tortious conduct"). Similarly no Defendant herein aimed any activity towards Texas.

Finally, even if Defendants had some business contact with entities in Texas—which has not been established through the record—occasional business contact is not enough. In *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 614 (5th Cir. 2008), the defendant actually worked in Texas for 37 days out of a 3-year period (far more contact with the state than any of the Defendants in a 17-year period). The Fifth Circuit described this level of contact as "lacking the substance and regularity to establish general jurisdiction." *Id.* at 611; *see also Patterson v. Aker Solutions Incorporated*, 826 F.3d 231, 236-37 (5th Cir. 2016) (finding no general jurisdiction where defendant had six employees in Texas, other employees trained in Texas, employees were processed in Texas, and defendant paid unemployment and franchise taxes in Texas).

As pleaded, Plaintiffs' jurisdictional allegations premised on Defendants conducting business in Texas and having ties to Greenwood Hall are conclusory, provide no specific claims upon which to attach jurisdiction, and are unreliable. Accordingly, the Court considers the sworn declarations from Defendants when they contradict these conclusory allegations. This Court finds no exceptional circumstances to distinguish this case from *Daimler* or *Hall* or any of myriad number of Fifth Circuit cases finding no general jurisdiction. Even if these allegations are accurate, none indicate the Defendants were at home in Texas. Their activities are not regular

and very few have substance. They are not continuous and certainly not systematic. In this case, there is no general jurisdiction over any of the Defendants.

### C. Specific Jurisdiction

Again, while Plaintiffs have not explained the reasoning for their assumption that the Court has personal jurisdiction over the Defendants, the Court assumes that Plaintiffs also believe that Defendants are subject to the specific jurisdiction of this Court. There have been no recent upheavals in the law of specific jurisdiction. While it is highly fact determinative, the law which sets the standards is well-developed:

> In this circuit, specific personal jurisdiction is a claim-specific inquiry: "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." We have articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

> The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court." The defendant "must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.' "

> In determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." In this inquiry we examine five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."

*McFadin*, 587 F.3d at 759-60 (citations omitted).

All of the pleaded facts applicable to specific jurisdiction have been discussed in great detail above. They are conclusory and unsupported by facts. In summary, Plaintiffs' briefing

seems to suggest that their claims to jurisdiction rest heavily on the allegations that AnswerNet and AES purchased assets from Greenwood Hall, that the individual Defendants were officers of Greenwood Hall, and that Boris and Bradfield occasionally communicated with persons in Texas.

This Court will not recount all the factors or analyze the alleged contacts a second time. The Defendants' sole contacts with Texas in this regard were Boris and Bradfield's occasional communications with Greenwood Hall employees in Texas. Only the alleged harms happened in Texas. Defendants never set foot in Texas in connection with any purchased assets or alleged legal violations. They never directed any action toward Texas.

Specific jurisdiction requires a link between the defendant's contacts and the specific claim asserted. It is a claim-specific injury. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006). The only contacts with Texas in the instant case were those of the Plaintiffs and/or Greenwood Hall. Courts have consistently held that a plaintiff's contacts or an unaffiliated defendant's contacts with the forum state are not imputed to another defendant.

Plaintiffs' remaining possible premise could again be boiled down to this theme: because Plaintiffs are located in Texas and damaged there, the resulting damage is enough to subject the Defendants to the jurisdiction of this Court. If taken to its logical end, Plaintiffs' argument suggests that if Plaintiffs had been located in Iowa or New Mexico, the Defendants could be sued there—regardless of where Defendants were when the alleged misconduct took place and regardless of whether they had ever been to either state.

The Fifth Circuit has held time and again that "economic consequences or other miscellaneous fall out" do not give rise to specific jurisdiction. *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753-55 (5th Cir. 1996). This Court holds that the Plaintiffs have not established that specific

jurisdiction exists in this case over any of the Defendants. They did not establish that Defendants had minimum contacts or that the cause of action arose out of those contacts. Even if it had under the facts of this case, the exercise of jurisdiction would not be fair and reasonable. The Fifth Circuit in *Panda Brandywine* summed up its situation with a conclusion equally applicable here:

> If we were to accept Appellants' arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts, and would have to appear in Texas to defend the suit "no matter how groundless or frivolous the suit may be." *Wallace,* 778 F.2d at 395. Such result would completely vitiate the constitutional requirement of minimum contacts and purposeful availment. We refuse to ignore the limits of specific jurisdiction to allow Appellants to sue Appellee in the district court based on Appellants' self-serving allegations when the "potential" injury claimed by Appellants resulted from interference with financing agreements that have nothing to do with Texas except for the mere fortuity that Appellants reside there.

*Panda Brandywine,* 253 F.3d at 870.

Therefore, specific jurisdiction cannot be a basis for the maintenance of this lawsuit.

## V.     Conclusion

Although Plaintiffs may well be right that certain statutory rights were violated in the manner in which they were dismissed from employment and paid, these four Defendants are not properly before this Court. None of the Defendants' alleged acts were aimed at Texas. Nothing in their business decisions or purchase of assets connected the Defendants with Texas in sufficient ways as to give rise to specific jurisdiction. Finally, given the minimal number of contacts with Texas, especially with regard to the Defendants' alleged connections to this case, Defendants cannot be held subject to the general jurisdiction of this State, even under the pre-*Daimler* standards. Clearly, in the post-*Daimler* world, they are not "at home" in Texas.

Accordingly, it is hereby **ORDERED** that Defendant Timothy Boris' First Motion to Dismiss (Doc. No. 5), Defendant Bill Bradfield's Motion to Dismiss (Doc. No. 10), Defendant

AnswerNet, Inc.'s Motion to Dismiss (Doc. No. 22), and Defendant AnswerNet Education

Services, Inc.'s Motion to Dismiss (Doc. No. 23) are **GRANTED**.

Signed at Houston, Texas, this ___8___ day of July, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE